# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Pierre Lamar Tipton,

               Petitioner,     Case No. 5:22-cv-11419

v.                              Judith E. Levy
                               United States District Judge

John Christiansen,

                              Mag. Judge Kimberly G. Altman

               Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1] AND DENYING A CERTIFICATE OF <u>APPEALABILITY</u>

Petitioner Pierre Lamar Tipton is a Michigan prisoner presently confined at the Saginaw Correction Facility. On June 14, 2022, Petitioner, proceeding *pro se*, filed a habeas corpus petition under 28 U.S.C. § 2254. (ECF No. 1.) He challenges his jury trial convictions of armed robbery, Mich. Comp. Laws § 750.529; first-degree home invasion, Mich. Comp. Laws § 750.110a(2); unlawful imprisonment, Mich. Comp. Laws § 750.349b; two counts of larceny of a firearm, Mich. Comp. Laws § 750.357b; and two counts of possession of a firearm during the commission of a felony ("felony-firearm"), Mich. Comp. Laws § 750.227b.

He raises five claims for habeas relief concerning self-representation, pretrial identification procedures, sentencing error, and ineffective assistance of trial counsel. Because the state court's denial of these claims was not contrary to, or an unreasonable application of, Supreme Court precedent, the petition for habeas corpus is denied. The Court also denies a certificate of appealability.

## I.   Background

Petitioner's convictions arose from an armed robbery that took place on the morning of February 6, 2017, in Clinton Township, Michigan. Under 28 U.S.C. § 2254(e)(1), on federal habeas review, a state court's determinations of facts are presumed to be correct. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Here, the Michigan Court of Appeals summarized the facts of Petitioner's case as follows:

> After the female victim took her children to school, she returned to her home and discovered a man, whom she identified as defendant, inside her kitchen. Defendant, who was armed with a knife, threatened to kill the victim, struck her in the face and the head, and pushed her to the floor. Defendant took the victim throughout the house and ordered her to open a safe where some guns were stored. Defendant took the guns, as well as cash, the victim's jewelry, and other items from the home. After defendant left, the victim called the police. A police tracking dog led the police to a nearby

house where Deante Lewis lived and Keywan Scott had spent the night.

The police conducted on-the-scene identifications for both Lewis and Scott, but the victim denied that either person committed the offense. According to Lewis and Scott, defendant was at the house earlier that morning; he said he had robbed a woman and he showed them some handguns and jewelry that he had in his possession. While the police were speaking to Scott, Scott received a telephone call from defendant and activated the phone's speaker so the police could hear the call. During the call, defendant asked Scott if the police were at the house, which Scott confirmed. At that point, defendant hung up. Later, the victim was shown a photographic array and selected defendant as the person who committed the offense. The police also discovered that defendant sold some jewelry to a jeweler on February 7, 2017, and the victim identified the items as having been taken from her home. The police arrested defendant on February 9, 2017.

*People v. Tipton*, No. 345039, 2020 WL 1332998, at *1 (Mich. Ct. App. Mar. 19, 2020).

On June 11, 2018, a Macomb County jury convicted Petitioner of armed robbery, first-degree home invasion, unlawful imprisonment, two counts of larceny of a firearm, and two counts of felony-firearm. (ECF No. 9-18, PageID.1170.) On August 1, 2018, the trial court sentenced him to prison terms of thirty to sixty years for the robbery conviction, twenty to forty years for the home invasion conviction, fifteen to thirty

3

years for the unlawful imprisonment conviction, five to ten years for each larceny conviction, and two years for each felony-firearm conviction. (ECF No. 9-22, PageID.1687.)

Petitioner appealed his convictions in the Michigan Court of Appeals. Petitioner raised three claims through counsel, arguing: (1) that the trial court committed structural error in refusing to rule on Petitioner's oral motion to represent himself; (2) that the trial court committed clear error in denying Petitioner's motion to suppress the victim's eyewitness identification; and (3) that the trial court violated Petitioner's due process rights at sentencing by mis-scoring Offense Variables 7 and 8 of the sentencing guidelines. (ECF No. 9-21, PageID.1449–1459.) Petitioner additionally filed his own *pro se* brief, arguing that his attorney's failure to timely request the appointment of an expert on eyewitness testimony denied him a fair trial and his constitutional right to the effective assistance of counsel. (*Id.* at PageID.1401–1407.)

On March 19, 2020, the Michigan Court of Appeals denied his appeal and affirmed his convictions and sentence in an unpublished *per curiam* opinion. *Tipton*, 2020 WL 1332998, at *1. On March 17, 2021,

the Michigan Supreme Court denied Petitioner leave to appeal because the court was "not persuaded that the questions presented should be reviewed by this Court." *People v. Tipton*, No. 161782, 2021 WL 1035070, at *1 (Mich. Mar. 17, 2021).

On June 14, 2022, Petitioner filed the present habeas petition, which the Court understands as raising the following claims: (1) Petitioner was unconstitutionally denied his right of self-representation; (2) a photo array identification involved impermissibly suggestive procedures and was unconstitutionally conducted without the presence of a defense attorney; (3) a mis-scoring of offense variables at sentencing violated Petitioner's due process rights; (4) Petitioner was denied his right to effective assistance of counsel because his trial attorney failed to present an expert on eyewitness identification; and (5) Petitioner was denied his right to effective assistance of counsel because his trial attorney failed to assert an alibi defense and to call Officer Adnan Durrani as a witness. (ECF No. 1, PageID.5–22.)

Respondent filed an answer contending that Petitioner's first claim is procedurally defaulted, his fifth claim is unexhausted, and all claims lack merit. (ECF No. 8, PageID.20–72.) Petitioner filed a reply. (ECF No.

5

10.) For the reasons set forth below, the Court agrees that Petitioner's claims lack merit.

## II.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court's review of constitutional claims raised by a state prisoner in a habeas action is limited to claims that were adjudicated on the merits by the state courts. *Stermer v. Warren*, 959 F.3d 704, 720 (6th Cir. 2020) (citing 28 U.S.C. § 2254(b)(1)). A habeas petitioner who asserts a claim previously adjudicated by state courts must show that the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The question under this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). A state-court decision is

6

> "contrary to" . . . clearly established law if it "applies a rule
> that contradicts the governing law set forth in [the Supreme
> Court's] cases" or if it "confronts a set of facts that are
> materially indistinguishable from a decision of [the Supreme]
> Court and nevertheless arrives at a result different from [the
> Supreme Court's] precedent."

*Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams*, 529 U.S. at 405–06; citing *Price v. Vincent*, 538 U.S. 634, 640 (2003); *Early v. Packer*, 537 U.S. 3, 7–8 (2002) *(per curiam)*).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts' of [a] petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413; citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "[T]hat application must be 'objectively unreasonable.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 409). The Sixth Circuit has stated that:

> [t]o succeed on a habeas petition, a petitioner must show more
> than that the state court made an error; he must demonstrate
> that "the state court's ruling on the claim being presented in
> federal court was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*Gaona v. Brown*, 68 F.4th 1043, 1047 (6th Cir. 2023) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico*, 559 U.S. at 773 (internal citations and quotation marks omitted).

Additionally, a state court's factual determinations are presumed to be correct on federal habeas review, and the petitioner "ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  Analysis

### A. Self-Representation

Petitioner claims that he was denied his Sixth Amendment right to self-representation because the trial court failed to rule on his request to represent himself. (ECF No. 1, PageID.5.) Respondent argues that this claim is procedurally defaulted. (ECF No. 8, PageID.63–67.) A court may, however, bypass a procedural-default question in the name of judicial

economy where a claim is easily resolvable on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (proceeding directly to the merits of a petitioner's claim where the question of procedural default was complicated and unnecessary to disposition of the case). Because it is more efficient to address Petitioner's self-representation claim on the merits, the Court will bypass the default argument.

Petitioner raised this claim on direct review. The Michigan Court of Appeals reviewed the claim for plain error and rejected it on the basis that Petitioner "did not make an unequivocal request to represent himself." *Tipton*, 2020 WL 1332998, at *3. Specifically, the court of appeals found that Petitioner's "request appeared to be for the purpose of arguing or pursuing his pro se motions" and not for the purpose of representing himself throughout the remainder of the trial. *Id.*

The Michigan Court of Appeals' decision was neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Criminal defendants have a constitutional right to conduct their own defense at trial if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 154 (2000); *Faretta*

9

*v. California*, 422 U.S. 806, 807 (1975). However, "the right to self-representation is not absolute." *Martinez*, 528 U.S. at 161. Nor is it automatic. A defendant's request for self-representation must be made clearly and unequivocally. *See Faretta*, 422 U.S. at 835; *see also United States v. Cromer*, 389 F.3d 662, 683 (6th Cir. 2004).

In this case, Petitioner raised the issue of self-representation shortly after being appointed new counsel. During a pretrial hearing on September 18, 2017, Petitioner's first appointed counsel requested to withdraw from the case due to a material breakdown in the attorney-client relationship. (ECF No. 9-5, PageID.203.) Counsel noted that he believed Petitioner was consulting with a jailhouse lawyer and continued to file *pro per* motions without counsel's consent. (*Id.* at PageID.201–203.) When the trial court asked Petitioner if he wished to represent himself, Petitioner responded: "I'd see if I can . . . be assigned a new attorney." (*Id.* at PageID.209.) The trial court proceeded with the appointment of new counsel. (*Id.* at PageID.210.)

During a subsequent pretrial hearing on November 1, 2017, Petitioner asked to "say something." (ECF No. 9-7, PageID.229.) The following conversation then occurred:

10

THE COURT: All right. Mr. Tipton, what did you want to say?

MR. TIPTON: At this point, your Honor, I want to on Article I, section, 13, I'm taking my own case, your Honor.

THE COURT: Well, at this point, you have an attorney that was just recently appointed.

MR. TIPTON: Understandable.

THE COURT: So. You're not going to be able to handle case [*sic*] from the inside, Mr. Tipton. You need to have an attorney that's not in custody that can obtain, review, deal with an—

MR. TIPTON: I said that I don't need an attorney right now, Your Honor.

THE COURT: I'm sorry.

MR. TIPTON: I prefer to defend a suit in my own proper person, your Honor.

THE COURT: Say that again.

MR. TIPTON: I said that I would like to defend the suit in my own proper person. I'm not saying that I don't need an attorney. He can still file the motions that I need and file for right now in fairness to my own proper person, your Honor.

THE COURT: I'm not sure what he's asking, Mr. Tomko.

MR. TOMKO: I believe that Mr. Tipton had filed a motion, correct?

11

MR. TIPTON: Yes.

MR. TOMKO: He had filed appropriate papers and I'm going to invite him to explain what those were.

* * *

THE COURT: Well, I don't have a copy of any other motions.

MR. TIPTON: Don't I have the right to be my own attorney, your Honor, on Article 1, Section 13?

THE COURT: Article 1, Section 13 of what? What are you referring to?

MR. TIPTON: MCR, your Honor.

THE COURT: Article 1 of—I don't know that the MCRs are written in articles. They're in court rules.

MR. TIPTON: It's the Constitution.

THE COURT: Oh, you're talking about the Constitution?

MR. TIPTON: Yeah.

THE COURT: Sure, you have the right to have your own attorney.

MR. TIPTON: That's what I'm here to do right now.

THE COURT: You're ready to do that?

12

MR. TIPTON: Yes, sir.

THE COURT: Because I'm ready to deny the motions then. We'll just go ahead and set this matter for trial.

(ECF No. 9-7, PageID.233–236.)

As the court of appeals recognized, Petitioner's request to represent himself was not unequivocal. Petitioner qualified his request by stating, "I'm not saying that I don't need an attorney," but "I don't need an attorney *right now*." (*Id.* at PageID.233–234 (emphasis added).) Petitioner's request to represent himself appears to have been made in the context of presenting his *pro per* motions to the trial court. (*See id.* at PageID.234.) As shown by the trial court's confusion, Petitioner's request was far from clear. Petitioner asked to "defend the suit in my own proper person," but he also indicated a preference for counsel by stating, in the same breath, that he would still like his attorney to "file the motions that I need." (*Id.*)

"It is well settled that there is no constitutional right to hybrid representation." *Cromer*, 389 F.3d at 681 n.12 (citing *United States v. Mosely*, 810 F.2d 93, 97–98 (6th Cir. 1987); *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)). "A defendant has a constitutional right to be

13

represented by counsel *or* to represent himself during his criminal proceedings, but not both." *Miller v. United States*, 561 Fed. Appx. 485, 488 (6th Cir. 2014) (citing *United States v. Mosely*, 810 F.2d 93, 97 (6th Cir. 1987)). Given the way in which Petitioner requested to represent himself, the court of appeals reasonably determined that Petitioner had not clearly and unequivocally expressed a desire to represent himself and waive counsel under *Faretta*. The claim was therefore reasonably denied by the state appellate court. Accordingly, habeas relief is not warranted.

## B. Identification Procedure

The complaining witness in this case identified Petitioner from a photo array presented to her several hours after the crime. (See ECF No. 9-19, PageID.1202–1203.) Petitioner argues that the photographic identification procedure violated his due process rights because it was unduly suggestive. (ECF No. 1, PageID.7, 17–18.) He also argues that he was deprived of his Sixth Amendment right to counsel during the photographic lineup. (*Id.*) In his reply brief, Petitioner acknowledges that the right to counsel does not extend to photographic lineups but argues that "the law needs to change." (*See* ECF No. 10, PageID.1722.)

14

As to Petitioner's first argument, the Michigan Court of Appeals rejected the claim that the photo array at issue was unduly suggestive. The court explained that a pretrial identification procedure violates a defendant's due process rights only "if it so impermissibly suggestive in light of the totality of the circumstances that it leads to a substantial likelihood of misidentification." *Tipton*, 2020 WL 1332998, at *4 (citing *People v. Kurylczyk*, 443 Mich. 289, 302; 505 N.W.2d 528 (1993)). When analyzing the likelihood of misidentification, the court noted, courts look to the factors outlined in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972), including the opportunity of the witness to view the criminal at the time of the crime, the witness' level of certainty, and the length of time between the crime and the identification. *Id.*

In applying the governing law to Petitioner's argument that his photograph impermissibly stood out from others in the photo array, the Michigan Court of Appeals concluded that:

> [T]he record does not support defendant's argument that the photographic identification procedure was unduly suggestive such that it created a substantial likelihood of misidentification.
>
> Defendant points to distinctions between his physical characteristics and characteristics of the other men used in the array, but mere differences in physical characteristics of

15

the individuals photographed do not render a lineup impermissibly suggestive. *Kurylczyk*, 443 Mich. at 304. We disagree with defendant's contention that any differences between his physical characteristics and the physical characteristics of the other men photographed caused his photograph to stand out from the others. Each person photographed is African-American, their complexions are not significantly different, and they appear to be similar in age. At least four of the men have obvious facial hair and the other two men appear to have some form of facial stubble. While defendant had the most facial hair, that factor does not make his photograph stand out from the others on the basis of the victim's description of the suspect. The six men all have similar shaped eyes and noses. Defendant asserts that only he and one other participant had their hair in braids, but the victim explained that she never saw the suspect's hair because he was wearing a hoodie and he had his hood pulled up. Thus, any differences in the hair styles of the six men in the photographs did not create a substantial likelihood of misidentification. Accordingly, the trial court did not err by finding that any differences in the physical characteristics of the men in the photographs did not render the array impermissibly suggestive. Rather, those differences affected only the weight of the victim's identification testimony, not its admissibility. *People v. Hornsby*, 251 Mich. App. 462, 466; 650 N.W.2d 700 (2002), superseded by statute in part on other grounds as stated in *People v. Rodriguez*, 327 Mich. App. 573, 580-581; 935 N.W.2d 51 (2019).

Furthermore, although the victim acknowledged that there were differences in the physical characteristics of the men in the photographic array, she also testified that she formerly served as a military police officer and had received training to notice differences in physical characteristics of individuals to

assist in making identifications. She further stated that she had several opportunities to view the suspect's face during the offense. She also provided a reasonably detailed description of the suspect, she viewed the photo array just a few hours after the offense, she identified several features of the suspect that led to her selection of defendant's photo, and she was generally certain of her identification.

*Tipton*, 2020 WL 1332998, at *5. The court of appeals also rejected Petitioner's argument that the photo array procedure was unduly suggestive. *Id.* at *5–6. First, the court noted that the police in fact employed precisely the double-blind procedure that Petitioner argued should have been used because "neither [the officer administering the photographic array] nor the victim knew which of the men photographed was the suspect." *Id.* Second, while Petitioner was correct that the photographs were presented at the same time rather than sequentially, the court did not find that this procedure created a substantial likelihood of misidentification under the totality of the circumstances. *Id.* at *6. Finally, the court explained that there was not, as Petitioner contended, any "legal requirement that an identification procedure be recorded." *Id.*

The Michigan Court of Appeals' decision was neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. "Due process concerns arise only when law enforcement

17

officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 109 (1977); *Biggers*, 409 U.S. at 198). Even then, suppression of the resulting identification is necessary only where "improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* at 239 (quoting *Biggers*, 409 U.S. at 201; citing *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)). "When reviewing a petitioner's claim that an out-of-court identification violated his or her due process rights, a court's primary concern is with the reliability of the evidence." *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001).

A two-part inquiry therefore governs the analysis of such claims. *Id.* "First, the defendant must show that the identification procedure was unduly suggestive." *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005). Second, "[i]f the defendant meets this burden, then the court must evaluate the reliability of the identification in the totality of the circumstances." *Id.* "If the defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable,

then no due process violation has occurred." *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

In Petitioner's case, nothing in the state-court record supports the contention that the identification procedure was impermissibly suggestive. "A photo lineup is unduly suggestive if it steers 'the witness to one suspect or another, independent of the witness's honest recollection.'" *Searcy v. Berghuis*, 549 F. App'x 357, 365 (6th Cir. 2013) (quoting *Wilson,* 250 F.3d at 397). This is true where, for example, a defendant's photograph is in color while every other photograph is black and white. *See United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001).

Here, it is clear from the record that the photo array did not steer the victim to identify Petitioner independent of her honest recollection of the man who robbed her at knifepoint. On July 13, 2017, the state trial court held a hearing to determine the admissibility of the identification. (*See* ECF No. 9-19, PageID.1178.) At that hearing, Lieutenant Eric Reincke testified that he administered the photo array by placing six photos in front of the victim and directing her to identify the responsible individual. (*Id.* at PageID.1237.) Reincke testified that the photo array was conducted as a "double blind" procedure, meaning that neither he

nor the witness knew the subject. (*Id.* at PageID.1244.) While Reincke and the victim acknowledged some differences in the features of those photographed (*id.* at PageID.1218–1223, 1283–1285), the photographs generally matched the victim's prior description: an African-American male in his late 20s or early 30s with facial hair, a pointed nose, and almond-shaped eyes.[1] (*See id.* at PageID.1204; ECF No. 9-21, PageID.1461.)

Even if Petitioner could satisfy his burden of showing that the identification procedure was unduly suggestive, there is no due process violation where the totality of the circumstances indicates that the identification was otherwise reliable. *Hill*, 967 F.2d at 230. Five factors are relevant to the reliability inquiry: (1) the witness's opportunity to

---

[1] At the pretrial hearing, there was some debate as to whether all, or only some, of the men photographed have facial hair. (*See* ECF No. 9-19, PageID.1226–1227, 1306.) This Court agrees with the Michigan Court of Appeals' determination that "[a]t least four of the men have obvious facial hair and the other two men appear to have some form of facial stubble." *Tipton*, 2020 WL 1332998, at *5. To the extent that there are some differences between Petitioner and the other men photographed, this is certainly not a case where the other men are "grossly dissimilar in appearance to" Petitioner. *See United States v. Wade*, 388 U.S. 218, 233 (1967). An identification is not unduly suggestive just because there some dissimilarities between the suspect and others in the array. This is true even "where only the defendant is dressed in clothing or has a personal attribute that is expressly referenced by a witness." *See Legenzoff v. Steckel*, 564 F. App'x 136, 144 (6th Cir. 2014).

view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200.

Here, the *Biggers* factors weigh heavily in favor of reliability. The victim testified that she had the opportunity to view Petitioner multiple times during the crime. She stated that when she first saw Petitioner in her kitchen, approximately an arm's length away, she was able to clearly view his face for "a good minute or two." (ECF No. 9-19, PageID.1191–1192.) She was also able to view his face when she made a phone call for the combination to her safe, and again as he was leaving the house. (*Id.* at PageID.1195, 1197.) She testified that she had military experience, which provided training on identification. (*Id.* at PageID.1193–1194.) She told police that the perpetrator was "an African American male," who was in his "late 20s, early 30s," was "a little bit taller than [her]," and "had facial hair . . . a pointed nose, and . . . almond-shaped eyes." (*Id.* at PageID.1204.) The victim accurately described Petitioner's appearance. (*See* ECF No. 9-21, PageID.1461.) The photo array was conducted

approximately five hours after the crime occurred. (ECF No. 9-19, PageID.1202.) The victim was able to identify Petitioner with ninety-nine percent certainty in a matter of seconds. (*Id.* at PageID.1218, 1239.) For these reasons, each of the *Biggers* weighs in favor of reliability. Accordingly, Petitioner fails to show that any due process violation occurred and is not entitled to relief on this claim.

Petitioner also raises a related claim that he was denied his right to counsel during the photo array. (ECF No. 1, PageID.7, 17.) Respondent argues that Petitioner did not exhaust this claim in the state courts. (ECF No. 8, PageID.94–95.) An unexhausted claim may, however, be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987).

Here, Petitioner's claim is plainly without merit under clearly established Supreme Court precedent. The Supreme Court has held that "the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." *United*

*States v. Ash*, 413 U.S. 300, 321 (1973). ). Petitioner argues that "the law needs to change" and that "[t]he U.S. Supreme Court and its Lower District courts must now take the next step . . . by requiring that there be a defense counsel present during any and all photo line ups." (ECF No. 10, PageID.1722.) On habeas review, however, the role of this Court is to review state-court decisions in light of clearly established Supreme Court precedent. Because clearly established Supreme Court precedent holds that there is no constitutional right to have counsel present at a photographic lineup, Petitioner is not entitled to habeas relief on this claim.

### C. Sentencing Error

Petitioner next argues that the trial court erred when scoring Offense Variables ("OVs") 7 and 8 under the Michigan Sentencing Guidelines. (ECF No. 1, PageID.8, 18.)  The Michigan Court of Appeals rejected this claim on direct review, concluding that the trial court properly calculated the score for each offense variable. *Tipton*, 2020 WL 1332998, at *7–8. Petitioner fails to show that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, federal law. "A state court's alleged misinterpretation of state sentencing

guidelines and crediting statutes is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). And "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Accordingly, Petitioner's claim that the trial court erred when it scored OVs 7 and 8 is not cognizable on federal habeas review.

Petitioner, however, argues that his sentencing error claim is cognizable on federal habeas review because the alleged sentencing error constitutes a violation of his due process rights. (*See* ECF No. 10, PageID.1723–1724.) Specifically, Petitioner contends that the state trial court "relied on materially false information in determining [his] sentence." (*Id.* at PageID.1724.) It is true that "a violation of due process exists when a sentencing judge relies upon erroneous information." *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017). However, a "'defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence' in order to prove a due-process violation." *Id.* (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990)).

24

Here, it is unclear what information Petitioner regards as false or unreliable. Petitioner does not appear to dispute the facts that the trial court relied on in imposing his sentence. Rather, he appears to dispute the applicability of OVs 7 and 8 to those facts. (*See* ECF No. 10, PageID. 1723–1724 (denying that the facts relied on meet the requirements of OVs 7 and 8 but not disputing those facts)). Accordingly, while Petitioner alleges a due process violation, he describes, at most, an error of state law. Because federal habeas corpus relief does not lie for errors of state law, Petitioner is not entitled to relief on this claim.

### D. Ineffective Assistance of Trial Counsel

Lastly, Petitioner raises two claims alleging ineffective assistance of counsel. Petitioner first argues that defense counsel was ineffective for failing to hire an identification expert to testify to the unreliability of eyewitness identifications. (ECF No. 1, PageID.10, 19–20.) He also argues that defense counsel failed to assert his alibi defense and to call Officer Adnan Durrani as a witness. (*Id.* at PageID.21–22.)

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, a petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v.*

*Washington*, 466 U.S. 668 (1984). *See Mejia v. Davis*, 906 F.3d 307, 314 (6th Cir. 2018). *Strickland* established a two-prong test for claims of ineffective assistance of counsel. A habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable" but whether "there is any

26

reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

### i. Failure to Call Expert Witness

Petitioner argues that defense counsel was ineffective for failing to hire an identification expert. (ECF No. 1, PageID.10, 19–20.) The Michigan Court of Appeals rejected this claim on direct review, concluding that:

> The record discloses that defendant's first appointed attorney contemplated calling an expert on eyewitness identification. At a pretrial hearing, counsel identified one witness he was considering calling and further indicated that he intended to consult the State Appellate Defender Office regarding an identification expert. Counsel also indicated that based on his preliminary investigation of the issue, there were factors associated with this case that seemed to weigh against the value of an identification expert. These factors included the victim's background as a military police officer for which she had received training in identifying suspects, as well as the length of time the victim had to observe the suspect during the offense. While defendant was represented by a different attorney at trial, there is no apparent reason why defendant's trial attorney would not have had the benefit of the former counsel's investigation or views about the use and value of an expert witness. Given this record, defendant has not overcome the presumption that defense counsel duly considered the possibility of calling an identification expert and reasonably decided to forgo an expert as a matter of trial strategy because

of its questionable, negligible, or even harmful value to the defense.

Furthermore, defendant has not provided any affidavit or other offer of proof showing what testimony an expert could have provided. Without an appropriate offer of proof, there is no basis for concluding that counsel's failure to call an expert deprived defendant of a substantial defense. In addition, because defendant has not demonstrated through an appropriate offer of proof that he has factual support for this ineffective-assistance claim, remand for an evidentiary hearing on this issue is not warranted. See *People v. McMillan*, 213 Mich. App. 134, 141-142; 539 N.W.2d 553 (1995); *People v. Simmons*, 140 Mich. App. 681, 685; 364 N.W.2d 783 (1985).

*Tipton*, 2020 WL 1332998, at *8-9.

The Michigan Court of Appeals' decision was neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is true, given "the suggestibility inherent in the context of the pretrial identification," that eyewitness identification carries certain dangers. *United States v. Wade*, 388 U.S. 218, 235 (1967). As a result, expert testimony on eyewitness identification is "universally recognized as scientifically valid and of 'aid to the trier of fact.'" *Forensic v. Birkett*, 501 F.3d 469, 482 (6th Cir. 2007) (citing *United States v. Smithers*, 212 F.3d 306, 315 (6th Cir. 2000)). Nevertheless, "[n]o precedent establishes

28

that defense counsel *must* call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011) (emphasis added). "The Constitution does not require defense counsel to pursue every trial strategy imaginable, whether likely to bear fruit or not." *Id.* (citing *Engle v. Isaac*, 456 U.S. 107, 134 (1982)).

As discussed above, the complainant's identification of Petitioner showed a strong indicium of reliability. To the extent defense counsel sought to draw out weaknesses in her identification testimony, such weaknesses were appropriately challenged through cross-examination. *See Jackson v. Bradshaw*, 681 F.3d 753, 762–63 (6th Cir. 2012) (finding trial counsel's decision not to call an eyewitness identification expert reasonable where potential weaknesses in the eyewitnesses' identification were demonstrated through cross-examination). Additionally, Petitioner presents no evidence that he has an expert witness who would be willing to testify regarding eyewitness identification or what the nature of that expert testimony would be in this case. In the absence of such proof, Petitioner is unable to establish

that he was prejudiced by counsel's failure to call such an expert witness to testify at trial. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007) (rejecting petitioner's ineffective-assistance claim arising from counsel's failure to call a particular witness because the petitioner "offered no evidence, beyond his assertions, to prove what the content of [the witness's] testimony would have been"). Accordingly, Petitioner is not entitled to relief.

### ii.   Failure to Present Alibi Defense and Call Officer Durrani as a Witness

Petitioner also argues that defense counsel was ineffective for failing to assert an alibi defense and call Officer Adnan Durrani, a K-9 unit police officer, as a witness.[2] (ECF No. 1, PageID.21.) Petitioner contends that Officer Durrani's testimony would support his alibi defense

---

[2] Notably, Officer Durrani did testify as a prosecution witness at trial, where he described using a dog to track a scent from the victim's residence to a nearby home. (ECF No. 9-16, PageID.742–751.) Occupants of that home subsequently implicated Petitioner in the robbery. *See Tipton*, 2020 WL 1332998, at *1. Petitioner's counsel competently cross-examined Officer Durrani at trial. (*See* ECF No. 9-16, PageID.751–754.)

and "impeach key prosecution witnesses." (*Id.*) Respondent argues that Petitioner failed to exhaust this claim in the state courts. (ECF No. 8, PageID.110–111.) As set forth above, however, an unexhausted claim may be adjudicated by a federal court on habeas review if the claim is without merit. *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987). Such is the case here.

"In reviewing a claim of ineffective assistance of counsel, courts should decline second-guessing an attorney's trial strategy." *Samatar v. Clarridge*, 225 Fed. Appx. 366, 372 (6th Cir. 2007). "[W]hether to call a witness" is a "classic question[] of trial strategy that merit[s] *Strickland* deference." *Rayborn v. United States*, 489 Fed. Appx. 871, 878 (6th Cir. 2012) (citing *Harrison v. Motley*, 478 F.3d 750, 756 (6th Cir. 2007)). Similarly, "[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 562 U.S. at 109 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8, (2003) (*per curiam*)). A trial attorney might reasonably conclude, for example, that "it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Id.*

Here, Petitioner offers nothing to rebut the strong presumption of adequate assistance. Nothing in the record indicates counsel's reasons for not calling Officer Durrani as a witness or for declining to present an alibi defense. "In the absence of such evidence, we are to presume that 'counsel's conduct falls within the wide range of reasonable professional assistance' guaranteed by the Constitution." *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002) (quoting *Bell v. Cone*, 535 U.S. 685, 702 (2002)); *see also Hawkins v. Woods*, 651 F. App'x 305, 311 (6th Cir. 2016) (endorsing, in the absence of record evidence, a presumption that counsel made "a reasonable strategic decision not to pursue an alibi defense"); *Butler v. Campbell*, No. 24-1654, 2025 WL 2254041, at *6 (6th Cir. Feb. 3, 2025) (requiring a petitioner to "overcome the presumption that counsel's decision not to present his alibi defense . . . was a matter of trial strategy").

Even if Petitioner could rebut the presumption that trial counsel was not deficient, he also offers nothing to show that he was prejudiced by counsel's decisions. "*Strickland*'s test for prejudice is a demanding one." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011). A petitioner "must show that there is a reasonable probability that, but for counsel's

32

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Here, there is no indication that Petitioner's trial might have gone differently had trial counsel presented an alibi defense or called Officer Durrani as a witness. Petitioner does not indicate what evidence might have supported an alibi defense aside from Officer Durrani's testimony. (*See* ECF No. 1, PageID.21.) And Petitioner's assertion that Officer Durrani's testimony would do so is entirely conclusory. Petitioner has not produced a statement or affidavit from Officer Durrani indicating what testimony he would have provided. Nor does Petitioner explain how any testimony from Officer Durrani might support an alibi defense or provide impeachment evidence. Petitioner does not even identify the specific witnesses who he speculates would be impeached by Officer Durrani's testimony. Without this information, there can be no basis for concluding that there is any likelihood—let alone a substantial one—that the result

of Petitioner's trial would have been different absent counsel's alleged mistakes.

Conclusory allegations alone cannot support an ineffective assistance of counsel claim. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IV.   Conclusion

For the reasons set forth above, Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), a habeas petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Dated: November 19, 2025          s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 19, 2025.

                                  s/William Barkholz
                                  WILLIAM BARKHOLZ
                                  Case Manager